**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NORFOLK SOUTHERN RAILWAY COMPANY**, Plaintiff,<br><br>v.<br><br>**PECO ENERGY COMPANY**<br><br>Defendant. | Case No. 2:26-cv-8680 |

**COMPLAINT**

Plaintiff Norfolk Southern Railway Company ("Norfolk Southern") hereby files this Complaint against defendant PECO Energy Company ("PECO"), and avers as follows:

**PARTIES**

1. Norfolk Southern is incorporated under the laws of the Commonwealth of Virginia with its principal place of business located in Atlanta, Georgia.

2. Norfolk Southern operates as an interstate rail carrier subject to the jurisdiction of the United States Surface Transportation Board ("STB"), and is governed by the provisions of the Interstate Commerce Act, 49 U.S.C. § 10101, *et seq.*

3. PECO is incorporated under the laws of the Commonwealth of Pennsylvania with its principal place of business located in Philadelphia, Pennsylvania.

4. PECO is formerly known as the Philadelphia Electric Company.

**JURISDICTION**

5. Jurisdiction in this matter is based upon 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Norfolk Southern and the defendant, and because the amount in controversy exceeds $75,000.00.

## VENUE

6. Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions occurred within this judicial district, PECO resides in this judicial district, and the property that is the subject of this lawsuit is situated within this judicial district.

## THE EASEMENT

7. On March 14, 1983, Consolidated Rail Corporation ("Conrail") granted an easement to PECO for one 230,000-volt electric transmission circuit, consisting of six conductors, (the "Transmission Lines") over, across, and along the land, roadway, and tracks of Conrail's Main Line Reading Branch in Chester and Montgomery Counties, Pennsylvania, in the vicinity of the Borough of Royersford, Pennsylvania (the "Easement"). A true and correct copy of the Easement is attached hereto as Exhibit A.

8. The Easement was recorded with the Montgomery County Recorder of Deeds at Book 4718 at Page 1960.

9. Through acquisition of Conrail by Norfolk Southern and another railroad that was approved by the STB, the subject railroad property and the Easement were conveyed to Norfolk Southern such that Norfolk Southern is the successor in interest to the Easement and owner of the property burdened by the subject Easement.

10. By its terms, the Easement is binding upon and inures to the benefit of the parties' respective successors and assigns.

11. Under Paragraph 10.1 of the Easement, PECO expressly agreed that PECO "shall promptly remedy any inductive interference growing out of, or resulting from the presence of" its

Transmission Lines, and that if PECO fails to do so, Norfolk Southern "may do so," with PECO to "pay to [Norfolk Southern] on demand the full cost and expense thereof."

12. Under Paragraph 6.2 of the Easement, PECO agreed to indemnify, defend, and save harmless Norfolk Southern from and against all cost and expense arising from any suits, claims, demands, and charges that Norfolk Southern may suffer by reason of the presence and use of PECO's Transmission Lines.

13. Under Paragraph 6.3 of the Easement, PECO assumed sole responsibility to indemnify and defend Norfolk Southern against all claims, actions, or legal proceedings arising, in whole or in part, from PECO's failure to comply with any obligation imposed on it by the Easement.

14. Under Paragraph 5 of the Easement, PECO agreed to comply, at its own cost, with all statutes, regulations, and orders applicable to its facilities.

## THE INDUCTIVE INTERFERENCE

15. Norfolk Southern operates grade crossings at Main Street and Arch Street in Royersford, which are protected by automated warning signals and gates.

16. Prior to June 2023, PECO installed the Transmission Lines on Norfolk Southern’s property subject to the Easement.

17. The Transmission Lines connect the power generation plant at Limerick, Pennsylvania with other stations and/or substations operated by PECO.

18. At all times relevant to this matter, PECO has run high voltage alternating current over the Transmission Lines.

19. Beginning in or about June 2023 and continuing to the present, the warning signals and gates at the Main Street and Arch Street crossings have repeatedly and falsely activated when no train is present.

20. Norfolk Southern retained National Signal Technology ("NST"), which, in a report dated July 14, 2023, determined that the false activations are caused by electromagnetic induction from PECO's Transmission Lines (the "NST Report").

21. Electromagnetic induction occurs when power lines, like the Transmission Lines, couple with another conductive surface, like railroad tracks, causing voltage to transfer from the power lines to the other surface without physically touching each other.

22. Inductive interference is the disruptive effect of unwanted voltage transferred via electromagnetic induction to a conductive surface, such as the stray voltage that disrupts railroad signals.

23. According to American Railway Engineering and Maintenance-of-Way Association (AREMA) standards, inductive interference occurs when electromagnetic coupling creates induced voltages that exceed safe operational thresholds, thereby disrupting the vital, failsafe operation of railroad signaling circuits and posing an unacceptable touch-hazard to personnel.

24. PECO was provided with the NST Report and did not refute its conclusion.

25. PECO retained its own consultants who measured voltages on the subject rails which confirmed the existence of inductive interference from the Transmission Lines.

26. PECO has not, however, remedied the inductive interference from the Transmission Lines.

## THE PUC ACTION

27. On July 28, 2025, the Borough of Royersford (the “Borough”) petitioned the Pennsylvania Public Utility Commission (the "PUC") at Docket No. P-2025-3056530, seeking emergency relief directed to Norfolk Southern and PECO with respect to alleged false activations at the Main Street and Arch Street crossings in Royersford (the “PUC Proceeding”).

28. By letter dated July 30, 2025, Norfolk Southern demanded that PECO take immediate corrective action to remedy the inductive interference and assume Norfolk Southern's defense and indemnification in the PUC Proceeding in accordance with the Easement.

29. PECO refused to assume the defense of Norfolk Southern, refused to indemnify Norfolk Southern from the costs arising from the Transmission Lines and the claims asserted by the Borough, and refused to remedy the inductive interference from the Transmission Lines.

30. Measurements of voltages independently taken by consultants for Norfolk Southern and PECO confirmed the existence of inductive interference from the Transmission Lines on Norfolk Southern’s tracks within the Easement.

31. This action seeks enforcement of the private contractual obligations PECO undertook in the Easement, and the relief requested herein does not ask the Court to regulate the Main Street or Arch Street crossings or to displace any order of the PUC.

## PECO’S FAILURE TO REMEDY THE INDUCTIVE INTERFERENCE

32. Despite PECO’s own measurements confirming the existence of inductive interference and Norfolk Southern’s demand that PECO remedy the inductive interference, PECO has neither agreed to remedy the inductive interference nor agreed to assume Norfolk Southern's defense in the PUC Proceeding.

33. Inductive interference exists on Norfolk Southern’s property covered by the Easement.

34. The inductive interference is caused by the Transmission Lines located within the Easement.

35. The inductive interference within the Easement is continuing and ongoing.

36. Norfolk Southern has incurred and continues to incur costs and expenses including, without limitation, attorneys' fees and expert fees in defending the PUC Proceeding, the investigation and determination of the required remediation of the inductive interference, the cost of temporary mitigation measures, including flagging, crossing protection, equipment modifications, and operating expenses resulting from slowing of track speed because of the mitigation efforts to avoid reduce the effect of the inductive interference on false activations, including additional crew and labor costs, additional fuel and locomotive costs, train delay, and other costs.

37. If the cure can be implemented in whole or in part by work within Norfolk Southern's own right of way, Norfolk Southern will incur the cost of performing that work. The full cost of the cure cannot at present be determined because the cure method has not been finally established.

38. Upon information and belief, the cost to design, test, and implement the remediation of the inductive interference exceeds $75,000.

**<u>COUNT I – Declaratory Judgment</u>**

39. Norfolk Southern incorporates the preceding paragraphs as if set forth fully at length herein.

40. An actual, justiciable controversy of sufficient immediacy and reality exists between Norfolk Southern and PECO concerning their respective rights and obligations under the Easement.

41. Norfolk Southern is entitled, pursuant to 28 U.S.C. §§ 2201 and 2202, to declarations of those rights and obligations under the Easement.

42. Norfolk Southern is entitled to a declaration that the inductive interference affecting the Main Street and Arch Street crossings exists and is caused by the presence and operation of PECO's Transmission Lines.

43. Norfolk Southern is entitled to a declaration that PECO is obligated under Paragraph 10.1 of the Easement to promptly remedy that inductive interference, and to bear the full cost and expense of doing so.

44. Norfolk Southern is entitled to a declaration that to the extent the required cure entails work on PECO's own facilities, including but not limited to the installation of a counterpoise on PECO's structures, Norfolk Southern is entitled to specific performance compelling PECO to perform that work.

45. Norfolk Southern is entitled to a declaration that PECO is obligated to indemnify and reimburse Norfolk Southern for the costs and expenses, including but not limited to attorneys' fees, expert fees, operational costs, and temporary mitigation efforts, that Norfolk Southern incurs (i) to defend the PUC Proceeding, (ii) to investigate and determine the remediation of the inductive interference, and (iii) to perform any portion of the remediation that Norfolk Southern is able to undertake within its own right of way without action by PECO.

**COUNT II – Specific Performance and Permanent Injunction**

46. Norfolk Southern incorporates the preceding paragraphs as if set forth fully at length herein.

47. PECO's obligation under Paragraph 10.1 of the Easement to promptly remedy any inductive interference is a definite and enforceable contractual undertaking concerning an interest in real property.

48. To the extent the cure of the inductive interference requires work on PECO's own facilities, Norfolk Southern cannot perform it and has no adequate remedy at law, and money damages cannot adequately compensate Norfolk Southern for the continuing interference with the safe operation of its grade-crossing warning system.

49. Norfolk Southern is entitled to specific performance of Paragraph 10.1 and to a permanent injunction compelling PECO to design and install, on PECO's own transmission facilities, the counterpoise or other source-side mitigation necessary to remedy the inductive interference.

**COUNT III – Contractual Indemnification and Defense**

50. Norfolk Southern incorporates the preceding paragraphs as if set forth fully at length herein.

51. Under Paragraphs 6.2 and 6.3 of the Easement, PECO is obligated to indemnify, defend, and hold Norfolk Southern harmless from and against all claims, actions, legal proceedings, costs, and expenses arising from the presence and use of PECO's Transmission Lines and from PECO's failure to comply with its obligations under the Easement, including the PUC Proceeding.

52. Norfolk Southern tendered the defense of the PUC Proceeding to PECO and PECO has failed or otherwise refused to defend and indemnify Norfolk Southern in the PUC Proceeding.

53. As a direct result, Norfolk Southern has incurred and continues to incur costs, expenses, attorneys' fees, and expert fees, which PECO is obligated to pay, and Norfolk Southern is entitled to recover those sums, including through further relief as they are incurred.

54. An actual controversy exists as to PECO's obligation to indemnify Norfolk Southern against any cost, allocation, or other obligation that may be imposed on Norfolk Southern in the PUC Proceeding, and Norfolk Southern is entitled to a declaration of that obligation.

**COUNT IV – Breach of Contract**

55. Norfolk Southern incorporates the preceding paragraphs as if set forth fully at length herein.

56. The Easement is a valid and enforceable contract binding on PECO.

57. Norfolk Southern has performed all of its obligations under the Easement.

58. PECO has breached the Easement by failing to promptly remedy the inductive interference, despite receiving the NST Report, PECO’s own consultant confirming the interference through independent measurements, and receiving Norfolk Southern's written demand.

59. PECO has breached the Easement by refusing Norfolk Southern's tender of the defense of the PUC Proceeding.

60. As a direct and foreseeable result of PECO's breaches, Norfolk Southern has suffered damages.

61. PECO's refusal to remedy the inductive interference constitutes a present breach of Paragraph 10.1, and to the extent Norfolk Southern can remediate the inductive interference itself

and incurs the cost of remedying the interference, Norfolk Southern is entitled in the alternative to recover those costs as damages for breach of contract, together with interest and costs.

62. PECO’s failure to abate the inductive interference has also damaged Norfolk Southern’s signals, equipment, and other property requiring Norfolk Southern to incur costs and expenses.

63. Norfolk Southern has also incurred costs, expenses, and operational disruptions from the temporary mitigation efforts taken to reduce the impact of the inductive interference from PECO’s Transmission Lines.

64. Norfolk Southern has also incurred the expense and costs of defending the PUC Proceeding after PECO rejected Norfolk Southern’s tender of the defense to PECO.

WHEREFORE, Norfolk Southern Railway Company respectfully demands that judgment be entered in its favor and against PECO Energy Company as follows:

A. As to Count I, declaring that (i) the inductive interference exists and is caused by PECO's transmission facilities within the meaning of the Easement; (ii) PECO is obligated under the Easement to promptly remedy the inductive interference at its sole cost and expense; (iii) to the extent the cure requires work on PECO's own transmission facilities, Norfolk Southern is entitled to specific performance compelling PECO to perform it; and (iv) PECO is obligated to indemnify and reimburse Norfolk Southern for the costs and expenses, including attorneys' fees and expert fees, that Norfolk Southern incurs to defend the PUC Proceeding, to determine the remediation, and to perform any portion of the remediation within its own right of way;

B. As to Count II, ordering specific performance of Paragraph 10.1 of the Easement and permanently enjoining PECO to design and install, on PECO's own transmission facilities, the counterpoise or other source-side mitigation necessary to remedy the inductive interference;

C. As to Count III, awarding Norfolk Southern the costs of indemnification and defense, including the attorneys' fees, expert fees, costs, and expenses it has incurred and continues to incur in the PUC Proceeding;

D. Granting further necessary or proper relief under 28 U.S.C. § 2202, including an award of the costs Norfolk Southern incurs to determine and to perform the remediation, as those costs are incurred;

E. As to Count IV, awarding Norfolk Southern damages for breach of contract in an amount to be determined at trial, together with interest and costs;

F. Awarding Norfolk Southern its costs of suit and post-judgment interest; and

G. Granting Norfolk Southern such other and further relief as the Court deems just and proper.

Respectfully submitted,

**COHEN & FREY P.C.**

By: /s/ Jeffrey D. Cohen

Jeffrey D. Cohen (Pa. Bar No. 77798)
Timothy L. Frey (Pa. Bar No. 311661)
The Times Building
32 Parking Plaza, Suite 402
Ardmore, PA 19003
Telephone: 215-609-1110
Facsimile: 215-609-1117
Email: jcohen@freightlaw.net
tfrey@freightlaw.net

*Attorneys for Plaintiff*
*Norfolk Southern Railway Co.*

Date: November 12, 2026